# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

BETHANY BROWN,

            Plaintiff,                    Case No. 1:18-cv-00708

v.                                    Hon.

M.G.H. FAMILY HEALTH CENTER,      Mag.
d/b/a MUSKEGON FAMILY CARE,

            Defendant.

_____

David M. Blanchard (P67190)
Blanchard & Walker, PLLC
Attorneys for Plaintiff
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: (734) 929-4313
blanchard@bwlawonline.com

_____

## COMPLAINT AND JURY DEMAND

Plaintiff Bethany Brown, through her attorneys, Blanchard & Walker, PLLC, brings this whistleblower and breach of contract action under the federal Enhancement of Contractor Protection From Reprisal For Disclosure of Certain Information, 41 U.S.C. § 4712, and under state law, and states as follows:

## PARTIES

1.      Plaintiff Bethany Brown ("Plaintiff" or "Brown") is an adult resident of the State of Michigan. Brown is a certified nurse midwife (CNM) and nurse practitioner (NP).

2.      Defendant M.G.H. Family Health Center, d/b/a Muskegon Family Care ("Defendant" or "MFC") is a Michigan nonprofit corporation with its principal place of business located at 2201 S. Getty Street, Muskegon, Michigan.

3.      Defendant is a federal health center program grantee under 42 U.S.C. § 254b.

4.      As a federal grant recipient, Defendant is subject to the whistleblower provisions provided for in 41 U.S.C. § 4712.

## JURISDICTION AND VENUE

5.      This is an action for whistleblower retaliation arising under the federal Enhancement of Contractor Protection From Reprisal For Disclosure of Certain Information, 41 U.S.C. § 4712. This Court has subject matter jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331 and 41 U.S.C. § 4712(c)(2) (providing in part that "…the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.").

6.     This action also involves a related claim for breach of contract. This Court may hear the state law claim under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a), because the claim arises from the same core of facts or related facts and circumstances.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and because a substantial part of the events giving rise to the claims set forth herein occurred in this district.

8.     Plaintiff exhausted all available administrative remedies as of June 15, 2018 pursuant to 41 U.S.C. § 4712(c).

## **GENERAL ALLEGATIONS**

9.     This case arises out of a Plaintiff's protected conduct in protesting gross mismanagement and waste on the part by MFC, a federal grant recipient.

10.    Plaintiff is a highly accomplished nurse midwife and nurse practitioner.

11.    Plaintiff began working for MFC as a nurse midwife on or around August 20, 2007.

12.    On or about July 20, 2009, Plaintiff executed a Nurse Midwife Employment Agreement with Defendant. (Ex. 1, Employment Agreement)

13.    The Employment Agreement was last renewed on or around January 23, 2014, for a one-year period commencing November 2, 2013 and ending November 2, 2014.

14.     The Employment Agreement provided in relevant part that Plaintiff's employment "may be terminated by either party without cause on ninety (90) days written notice of the party's intention to do so. This Agreement may be terminated by MFC for cause, effective upon notice to [Plaintiff]." (Ex. 1, ¶ 8(C))

15.     On or around July 1, 2013, a group of MFC care-providers submitted a formal complaint letter addressed to the MFC Board of Directors and its CEO, Sheila Bridges.

16.     The complaint letter highlighted financial mismanagement and waste by MFC executives and board members. The letter called for the resignation of Bridges and the entire Board by July 10, 2013. The letter also stated that the signatories would contact the appropriate supervisory bodies if such resignations were not forthcoming.

17.     Plaintiff was an active participant in organizing activities among the MFC employees and care-providers, and the letter's recipients were aware that Plaintiff was involved in preparing the letter and closely associated with its signatories.

18.     After receiving the letter, Bridges and the Board did not resign from their positions. Instead, Bridges responded to her detractors denying the complaints and writing that "*God* will judge you for lies and deception!"

19.    Around this time, several preparers of the July 1, 2013 letter, including Plaintiff, contacted the federal Human Resources and Service Administration ("HRSA") regarding the financial mismanagement complained of in the letter.

20.    Prior to the July 1, 2013 letter, Plaintiff had consistently received positive annual performance reviews. In those earlier reviews, her evaluators described Brown as an "exceptional provider," "very professional," "a great person to be around and to work with," and someone who goes "above and beyond her work duties." Plaintiff's first review after the July 1, 2013 letter, however, reflected a downward evaluation.

21.    In January 2014, HRSA conducted an audit of MFC. As part of this audit, HRSA representatives met with Plaintiff and other MFC employees. This meeting occurred on MFC property. The auditors determined that MFC had violated multiple conditions required of it as an HSRA grantee.

22.    For example, the audit found that MFC had failed to follow proper financial management controls and accounting measures, thus preventing HSRA investigators from tracking and assessing the use of federal funds for government-sponsored activities.

23.    Plaintiff and other MFC employees continued to publicly complain of the financial mismanagement and waste following the January 2014 audit.

24.    For example, in March 2014 Plaintiff and other current and former MFC employees participated in an informational picket outside of MFC. The purpose of the picketing was to draw attention to the financial mismanagement and other corrupt practices.

25.    Thereafter, MFC leadership manufactured false misconduct allegations against Plaintiff and encouraged others to report Plaintiff for alleged misconduct.

26.    One act of retaliation was on or around July 15, 2014, when MFC issued Plaintiff a three-day suspension. The suspension accused Plaintiff of "insubordination" for disagreeing with the medical directives of her supervisor, Dr. Thomas McCurdy, during an obstetrician team meeting.

27.    MFC terminated Brown on September 25, 2014. The termination letter falsely accused Brown of "dishonest and fraudulent conduct involving the falsification of MFC records" and of providing patient-care that was allegedly "beyond the scope of your Nurse Practitioner Privileges."

28.    These allegations were used as a pretext to justify termination of Plaintiff and to deny her contractual severance benefits. MFC relied on these false and exaggerated justifications as a pretext for firing Plaintiff because of her participation in making protected disclosures to HRSA. *See* 41 U.S.C. § 4712(a).

29.    MFC also retaliated against Plaintiff by causing her to lose her admitting privileges at the local hospital, interfering with her medical education, and

6

disparaging her to prospective employers thus preventing her from timely securing re-employment.

30.     The scope-of-practice and medical record complaints were submitted to the Mercy Health Muskegon Hospital's Credential Committee on September 10 and 23, 2014, respectively.

31.     Thereafter, the MFC used the complaints as a pretext to terminate Plaintiff's employment with MFC.

32.     Plaintiff's employment was terminated on September 25, 2014.

33.     After reviewing the complaints against Plaintiff, the Credential Committee determined the allegations lacked merit. By the time the Committee issued its decision on November 8, 2014, however, Plaintiff's employment with MFC had been terminated.

## COUNT I
## Whistleblower Retaliation, 41 U.S.C. § 4712

34.     The federal Enhancement of Contractor Protection From Reprisal For Disclosure of Certain Information ("the Act"), 41 U.S.C. § 4712, prohibits recipients of federal funds (including contractors, subcontractors, grantees, or subgrantees) from making reprisals against their employees for making protected disclosures.

35.     Protected disclosures under the Act include: allegations of gross mismanagement of a federal contract or grant; a gross waste of federal funds; or a violation of law, rule, or regulation related to a federal contract or grant; when such disclosures are made to, among other persons, a management official or other employee of the contractor or grantee who has the responsibility to investigate, discover, or address misconduct within the organization. *See* 41 U.S.C.§ 4712(a).

36.     Plaintiff engaged in protected activity under the Act.

37.     MFC retaliated against Plaintiff for her protected activity in violation of 41 U.S.C. § 4712 (a) by suspending and then firing her, refusing to pay her severance as called for in the Employment Contract, and by disparaging her to prospective employers and her doctorate program.

38.     Plaintiff has exhausted all available administrative remedies as of June 15, 2018 pursuant to 41 U.S.C. § 4712(c).

39.     As a result, Plaintiff was harmed, and continues to be harmed, in that she was denied the benefits of employment, suffered economic loss, damage to her professional reputation, emotional distress, and damage to her health.

## COUNT II
### Breach of Contract

40.     MFC's commitments in the Employment Agreement (Ex. 1) constitute valid and enforceable contractual promises to Plaintiff.

8

41.     MFC's actions discussed above constitute breaches of the promises contained in the Employment Agreement.

42.     As a direct and proximate result of MFC's breaches, Plaintiff has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks actual damages for humiliation, emotional distress, lost wages (including front pay, back pay, and benefits), punitive damages, exemplary damages, injunctive relief, costs, attorney's fees, and all other relief in law or equity that this Court may deem just and proper.

Respectfully submitted,

/s/ David M. Blanchard
David M. Blanchard (P67190)
Blanchard & Walker, PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: (734) 929-4313
Dated: June 27, 2018          blanchard@bwlawonline.com

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, Bethany Brown, by and through her attorneys, Blanchard & Walker, PLLC, and hereby demands a jury trial in the above-captioned matter.

Respectfully submitted,

/s/ David M. Blanchard
David M. Blanchard (P67190)
Blanchard & Walker, PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: (734) 929-4313
blanchard@bwlawonline.com

Dated: June 27, 2018